**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**VERA NYIAWUNG,**<br><br>**Defendant.** | **Case No.**<br><br>**VIOLATION:**<br>**18 U.S.C. § 1349 (Conspiracy to Commit Health Care Fraud)**<br><br>**FORFEITURE:**<br>**18 U.S.C. § 982(a)(7); 28 U.S.C. § 2461(c); 21 U.S.C. § 853(p); 18 U.S.C. § 982(b)(1) (Criminal Forfeiture)** |

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### D.C. Medicaid and Behavioral Health Regulatory Framework

1. Medicaid was a health insurance program established by Congress under Title XIX of the Social Security Act of 1965. In the District of Columbia (D.C.), Medicaid was jointly funded by the federal and D.C. governments. Medicaid provided health insurance coverage to D.C. residents whose incomes were below a certain financial threshold. Recipients of medical services covered by Medicaid were referred to as "beneficiaries." Medicaid was a "health care benefit program" as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f). Under Medicaid, only medically necessary services were authorized to be reimbursed.

2. In Washington, D.C., behavioral health services were administered by the D.C. Department of Behavioral Health ("DBH"). As the primary mental health authority in D.C., DBH was responsible for implementing and overseeing D.C.'s Mental Health Rehabilitative Services ("MHRS") program, a program covered by Medicaid. MHRS services were intended to assist eligible beneficiaries navigate and alleviate the impact of mental and behavioral health issues. Beneficiaries who received MHRS were often referred to as "consumers."

3. Under the MHRS program, Medicaid covered and reimbursed standard behavioral health services, such as Community Support services. Community Support services included, among other things, assistance and support for mental-health consumers in stressor situations, individual mental health interventions, assistance with increasing social support skills to enable consumers to ameliorate life stresses, and the development of mental health relapse prevention strategies. Community Support services were provided by a consumer's Community Support Worker ("CSW") under the auspices of a certified Medicaid Provider known as a Core Services Agency ("Provider").

4. Providers are required to maintain up-to-date records and to accurately document all MHRS encounters billed under the Provider's electronic medical records ("EMR") system. In D.C., Providers typically use an EMR platform called Credible. In order to be reimbursed by Medicaid for MHRS services provided to consumers, CSWs are required to document the service in Credible by inputting clinical encounter notes that included, among other information, consumer information, treatment notes, and dates and times of service. CSWs are authorized to conduct encounters in several ways, including by telephone. A "tele" visit indicated a telephonic or virtual encounter with a consumer. CSWs were required to validate the accuracy and authenticity of the services by signing their names electronically in Credible. Once a CSW submitted an encounter

note into Credible for reimbursement, Providers were required to review the notes for accuracy and approval prior to submission to Medicaid for reimbursement.

5. In Washington, D.C., MHRS encounters with consumers were billed in "units," which were equivalent to 15 minutes of time providing services to a consumer. Standard MHRS encounters, including Community Support services, were assigned billing code H0036 and reimbursed by Medicaid at a rate of $97.08 per hour. DBH regulations required the actual start and stop time of MHRS encounters to be used to calculate the duration of the service. For purposes of reimbursement, Medicaid authorized service encounters exceeding seven minutes to be rounded to the nearest whole unit.

6. Providers, as well as all employees of Providers, including CSWs, were required to know, understand, and follow all federal and local laws, including Medicaid rules and regulations applicable in Washington D.C.

**The Defendant, Related Entities, and Other Persons**

7. Quality Healthcare Services, LLC ("Quality") was a Medicaid Provider headquartered at 1818 New York Avenue, Suite 222, in Washington, D.C. At all relevant times, Quality was authorized to provide MHRS services to youth and adolescents who were Medicaid beneficiaries in the District of Columbia. At all relevant times, the services that Quality was authorized to provide included Diagnostic/Assessment, Medication/Somatic Treatment, Counseling and Psychotherapy, and Community Support, in accordance with Chapter A34 of Title 22 of the District of Columbia Code of Municipal Regulations. On September 14, 2020, Quality entered into a service agreement with the District of Columbia Department of Health Care Finance (DHCF) for Mental Health Clinic Services, Psychiatric Services, and Medicare Part B Services.

8. Defendant **VERA NYIAWUNG** was a resident of Bowie, Maryland and, beginning in or about January 2023, was employed as a nurse by Quality. At times, **VERA NYIAWUNG** also performed CSW work, supervised other employees, and reviewed encounter notes for approval.

9. Co-Conspirator 1 was a resident of Laurel, Maryland. Co-Conspirator 1 was listed as "Governor" on Quality's original Certificate of Organization and appeared to be the controlling executive of Quality who ran the day-to-day operation of the company. Co-Conspirator 1 exercised oversight over multiple CSWs (the "the CSW Co-Conspirators") and, among other things, instructed employees on how to document and bill for services. In addition, Co-Conspirator 1 someimes performed CSW services at Quality.

10. Co-Conspirator 2 was a resident of Brambleton, Virginia, and Co-Conspirator 1's daughter. Co-Conspirator 2 served as the Chief Operations Officer (COO) and Human Resources Director at Quality, and was listed as "owner primary contact" on company documents. Co-Conspirator 2 also performed CSW services at Quality.

11. In their roles as CSWs, Co-Conspirator 1, Co-Conspirator 2, and the CSW-Co-Conspirators, including **VERA NYIAWUNG**, submitted, or caused to be submitted, claims to Medicaid for reimbursement for MHRS services they allegedly performed.

**COUNT ONE**
**Conspiracy to Commit Health Care Fraud**
**(18 U.S.C. § 1349)**

12. The General Allegations section of this Information is re-alleged and incorporated by reference as though fully set forth herein.

13. From in or around January 2022, and continuing through in or around at least February 2025, in the District of Columbia and elsewhere, the defendant,

**VERA NYIWUNG**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate and agree with Co-Conspirator 1, Co-Conspirator 2, and others known and unknown to the United States Attorney, to commit health care fraud, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, D.C. Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**Purpose of the Conspiracy**

14. The purpose of the conspiracy was for the defendant and his co-conspirators to unjustly enrich themselves by submitting and causing the submission of false and fraudulent claims to a federal health care benefit program.

**Manner and Means**

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy, included, among other things, the following:

15. Co-Conspirator 1, Co-Conspirator 2, **VERA NYIAWUNG,** and the other CSW Co-Conspirators, submitted false and fraudulent MHRS clinical encounter notes to Medicaid for reimbursement, including MHRS encounter notes that grossly inflated the amount of time spent conducting services, or notes that were based on MHRS encounters that did not occur.

16. Co-Conspirator 1 instructed the CSW Co-Conspirators to make sure to use the maximum amount of units authorized by Medicaid for a consumer during a 180-day period—

without regard to medical necessity and without regard to whether the services had actually been performed.

17. Co-Conspirator 1 instructed the CSW Co-Conspirators, including **VERA NYIAWUNG**, to bill four units (one hour) for all MHRS telehealth encounters, regardless of how much time a CSW actually spent on the telephone with a consumer, and even if the call only lasted a few minutes. To avoid scrutiny from DBH, the CSW Co-Conspirators, to include **VERA NYIAWUNG**, were trained by Quality management and Co-Conspirator 1 to avoid repeatedly billing 60 minnutes for an encounter, and to instead offset the times that they billed in order to make the length of the phone call appear more realistic. For example, the CSW Co-conspirators were advised by Co-Conspirator 1 and management to randomly choose a time between 54 and 60 minutes when billing a telehealth encounter.

18. Co-Conspirator 1 also directed the CSW Co-Conspirators to inflate the amount of time they billed for conducting diagnostic assessments (DAs). At first, Co-Conspirator 1 instituted a "rule" that employees bill all DAs for three hours, even if they did not speak with the consumer for that amount of time. Co-Conspirator 1 later changed the rule to one hour for all DAs.

19. Co-Conspirator 1 told the CSW Co-Conspirators to take information learned during a single telehealth session and use it to create additional notes documenting false and fraudulent hour-long MHRS encounters. For example, if a CSW spoke to a consumer on one day and discussed three different topics, CSWs were instructed to spread that information out in order to bill for three days of services, even if the CSW did not speak with the consumer on any other day. These additional fictitious encounters were then submitted to Medicaid for reimbursement. Each submitted claim was purported to be medically necessary and performed as documented in the encounter notes.

All in violation of Title 18, United States Code, Section 1349

**FORFEITURE ALLEGATION**

1. The allegations of this Information are re-alleged, and by this reference, fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **VERA NYIAWUNG**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If any of the property described above as being subject to forfeiture, as a result of of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b )(1) and Title 28, United States Code, Section 2461(c).

JEANINE FERRIS PIRRO
United States Attorney

By: ______________________________
Jason Facci (DC Bar 1027158)
Assistant United States Attorney
Fraud, Public Corruption, & Civil Rights Section
601 D. Street, NW
Washington, D.C. 20530
(202) 252-7742
Jason.Facci@usdoj.gov